HOUSE et al. v. STEPHENS. (No. 245.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 26, 1917. Rehearing Denied Nov. 14, 1917.)

1. JUDGMENT ⬅➡707—CONCLUSIVENESS—SUBJECT-MATTER AND ISSUES.

A petition in another suit to which defendants were not parties and which did not involve the land in controversy or relate to the subsequent suit is inadmissible even for the purpose of proving heirship of plaintiff in the subsequent suit.

2. EVIDENCE ⬅➡271(20) — HEIRSHIP — SELF-SERVING DECLARATION.

A petition in a prior action to which defendants were not parties and which was unverified is in the nature of a self-serving declaration and is inadmissible to prove plaintiff's heirship.

3. ADVERSE POSSESSION ⬅➡115(1)—PRESUMPTION OF GRANT—QUESTION FOR JURY.

In trespass to try title, where it appeared that plaintiffs asserted rights to the land which it was claimed had not been asserted by their ancestors for 50 years, the question of the presumption of the grant by reason of the lapse of time should be submitted to the jury.

Appeal from District Court, Harris County.

Trespass to try title begun by James Stephens and Susan V. Stephens against H. C. House and others, and continued by the last-named plaintiff as surviving wife of James Stephens. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Tharp & Tharp and Baker, Botts, Parker & Garwood, all of Houston, for appellants. Carothers & Brown, of Houston, for appellee.

BROOKE, J. This is a suit in trespass to try title, filed October 14, 1913, in the Sixty-First district court of Harris county, Tex., by James Stephens and Susan V. Stephens against H. C. House and others for an undivided one-sixth of the Mary Owens league, lying partly in Harris county and partly in Montgomery county, Tex. The brief for the appellee admits that the statements in appellants' brief with reference to the nature and result of the suit are in the main correct, and therefore we follow the said statements in the general brief for appellants.

On January 6, 1916, plaintiff Susan V. Stephens filed a second amended original petition, in which she seeks to recover as surviving wife of James Stephens, deceased, against H. C. House, J. E. Lafferty, G. W. Tharp, R. L. Whitehead, Sam H. Dixon, H. Schlakzug, R. Leslie Bruce, R. W. Houk, W. A. Paddock, Hugh Carwile, Mrs. J. D. Crawford, S. E. Needham, Emory Albertson, and the Producers' Oil Company, for an undivided one-sixth of a certain tract of land lying partly in Harris and partly in Montgomery county, Tex., and known as the Mary Owens survey. She further charged the defendants Producers' Oil Company and H. C. House, and each of them, with having drilled oil wells on the land, and taken from the land large quantities of oil, and having converted such oil to their own use and benefit, the value of which amounts to $250,000. She prayed judgment for title and possession of the land hereinafter described, and for an accounting by the Producers' Oil Company and H. C. House for the oil taken from the land since October 1, 1913, for damages and costs, general and special relief. On January 6, 1916, she also filed a first supplemental petition, in which she denied the allegations in the answers of the defendants. She further alleged: That the property described in her second amended original petition was owned by Jacob Miller in his lifetime as his separate estate. That he died intestate on or about September 21, 1894, and left surviving as his only heirs at law his wife, the plaintiff, and the following children, to wit: Travis B. Miller, born April 19, 1866; Mary Wilkerson, wife of Fred A. Wilkerson, born February 14, 1871; Emma Winkler, wife of Frank Winkler, born January 1, 1876; Henrietta Chambless, wife of Ed Chambless, born March 24, 1881; Lizzie Litzler, wife of John Litzler, born February 14, 1885, and Fred Miller, born March 26, 1891. That each of said children, by deeds

executed and delivered on or about the 4th day of October, 1912, conveyed to plaintiff all their interest in said property, and because of disabilities of said children, limitation did not run against them. Plaintiff pleaded by trial amendment filed March 31, 1916, that defendant H. C. House was without the limits of the state of Texas from April 1, 1914, to April 1, 1915, and for 9½ months during 1915, during which time the statute of limitations did not run in his favor.

The defendant H. C. House filed demurrer and answer, in which he says he is owner of 985 acres out of what is known as the Willard Richardson 1,135-acre tract, off the south end of the Mary Owens league, described as follows:

"Beginning at a point on the west line of the Mary Owens league 5,120 feet north of the southwest corner of said league, said point being the northwest corner of said Richardson tract; thence east at right angles to the Mary Owens league and along the north line of said Richardson tract 7,080 feet, more or less, to the east line of said Mary Owens league; thence south along the east line of the Mary Owens league to the southeast corner thereof on the San Jacinto river, and being the west fork of said San Jacinto river; thence up said river with its meanders to the southeast corner of 150-acre tract conveyed by H. C. House to W. P. Hamblen by deed dated October 25, 1905, and recorded in volume 182, pages 157–159, Deed Records for Harris County, Tex.; thence north along the east line of said W. P. Hamblen 150-acre tract 5,383 feet to a gas pipe set for the northeast corner of W. P. Hamblen 150-acre tract; thence west 1,364 feet to the west line of the Mary Owens league; thence north along the west line of said Mary Owens league 874 feet to the place of beginning. And as to said land above described this defendant denies all and singular the allegations in plaintiff's petition, and says he is not guilty of the wrongs, injuries, and trespasses therein complained of, and as to all the remainder of said tract herein sued for by the plaintiffs this defendant disclaims all interest therein."

To which he pleads not guilty, also pleads the several statutes of limitation for three years, five years, and ten years to the lands above described. Defendant House also pleaded the two-year statute of limitations as to the damages by reason of taking oil from said land.

Defendants W. A. Paddock and R. W. Houk filed answer, in which they demurred and pleaded "not guilty." They also pleaded the statute of limitations of three years, five years, and ten years to 62.8 acre tract at Pauli, conveyed by W. H. Taylor to L. C. Kemp and R. W. Houk on April 1, 1911, by deed recorded in Vol. 62, page 518, Deed Records of Montgomery County, Tex., and disclaimed as to all lands sued for except said tract.

Defendant J. E. Lafferty filed second amended answer, in which he demurred, denied every allegation in paragraphs 1, 2, and 3 of plaintiffs' second amended original petition, pleaded "not guilty," and that he is the owner of the following tract:

198 S.W.—25

"A rectangular shaped tract of land of about 211 acres off the west end of that certain 336-acre tract out of the Mary Owens survey, which survey is situated partly in Harris and partly in Montgomery counties, Tex., said 336-acre tract being thus described: Beginning at a point on the west boundary line of said Mary Owens survey distant from its southwest corner of 1,906½ varas, said beginning point being the northwest corner of the Richardson tract out of said survey, which tract is now known as the House or the Hamblen tract; thence north along the west line of said survey 750 varas to corner; thence east to the east line of said Mary Owens survey to corner; thence south along the east line of said Owens survey 750 varas to the northeast corner of said Richardson tract; thence west along the north line of said Richardson tract to the place of beginning."

He disclaimed as to all other lands except the above tract. He also pleaded the statute of limitations of three years, five years, and ten years to the above tract. Defendant J. E. Lafferty filed demurrer to paragraph 3 of plaintiffs' first supplemental petition, in which plaintiffs set up disabilities, because same only states dates of births of various married women, and fails to state date of their marriages, respectively.

Defendants G. W. Tharp and R. L. Whitehead filed answer, in which they pleaded "not guilty," and disclaimed as to all lands sued for except the following:

"One hundred and twenty-five (125) acres of land, rectangular in shape, off the east end of a tract of 336 acres out of said Mary Owens league, all of which 125 acres lie in Harris county, said 336-acre tract described as follows: Beginning on the west boundary line of said league at a point 1,906½ varas north from its southwest corner; thence north along the west line of said league 759 varas, more or less, to a gas pipe, same being northwest corner of said tract; thence east along the north line of said tract 2,549 varas, more or less, to corner, in the east line of said league; thence south along the east line of said league 759 varas, more or less, to House's northeast corner; thence west along the north line of the House and Hamblen tract 2,549 varas, more or less, to the place of beginning."

They also pleaded the statute of limitation of three years, five years, and ten years to the above tract of 125 acres, G. W. Tharp claiming an undivided six-tenths, and R. L. Whitehead claiming an undivided four-tenths thereof.

Producers' Oil Company filed second amended original answer, in which it demurred generally, disclaimed except as to the 985-acre tract, described in answer of H. C. House, to which tract it pleaded "not guilty"; that it is the owner of said tract as lessee from H. C. House. It pleaded statute of limitations of three years, five years, and ten years; also improvements in good faith.

Emory Albertson filed answer, in which he pleaded "not guilty"; statutes of limitations of three, five, and ten years.

This cause was submitted to a jury on special issues on April 3, 1916. Defendants requested special charges, which were overruled, and filed special objections before it was read to the jury, and excepted to the court's ruling. The court took from the jury

the consideration of questions involved in a certain tax judgment, sale, and deed to the lands claimed by J. E. Lafferty, G. W. Tharp, and R. L. Whitehead, and rendered judgment against said Lafferty, Tharp, and Whitehead thereon, which said last-named parties required the court to file its findings of fact and conclusions of law thereon, from which findings and conclusions defendants excepted.

On the answers of the jury to special issues and the findings by the court decree was rendered on the 5th day of April, 1916, as follows: In favor of plaintiff against H. C. House and Producers' Oil Company for an undivided 97/672 of the 985 acres claimed by House; against G. W. Tharp and R. L. Whitehead for an undivided 97/672 of 125 acres claimed by them; against Emory Albertson for a undivided 1115/10000 of a 52-acre tract claimed by him; against R. W. Houk and W. A. Paddock for an undivided 1115/10000 of a 62.8-acre tract claimed by them; also plaintiff took judgment by default against Hugh Carwile and against Mrs. J. D. Crawford for an undivided one-sixth of the Mary Owens survey. She further recovered from H. C. House $649.42 damages for oil removed from the land. Suit was dismissed as to all other defendants except those above named.

It was further decreed:

"With reference to the validity and effect of the tax judgment and sale thereunder to W. W. Kirkpatrick and the conveyances by said Kirkpatrick to the defendants J. E. Lafferty, G. W. Tharp, and R. L. Whitehead having been by the court withdrawn from the jury, and by the court decided in favor of plaintiff, it is ordered, adjudged, and decreed that said defendants have nothing of plaintiff's title under said tax judgment, sale thereunder to Kirkpatrick, and conveyances by Kirkpatrick to said defendants."

To which judgment the defendants in open court excepted, and gave notice of appeal. All of the defendants filed motion for new trial on April 6, 1916, also amended motion for a new trial. Lafferty, Tharp, and Whitehead filed supplemental motion for a new trial.

All motions for a new trial by all parties were on the 13th day of April, 1916, overruled, and also on the same day the supplemental motion for new trial by Tharp, Whitehead, and Lafferty was overruled, to which rulings all parties excepted, gave notice of appeal to the Court of Civil Appeals for the First Supreme Judicial District of Texas, and 90 days after adjournment of the term was allowed in which to file statement of facts and bills of exception.

On May 1, 1916, the defendants H. C. House, R. L. Whitehead, G. W. Tharp, Producers' Oil Company, Emory Albertson, W. A. Paddock, R. W. Houk, and J. E. Lafferty filed appeal and supersedeas bond, which was duly approved.

In the general brief for appellants complaint is made by the first assignment of error, as follows:

"The court erred in admitting, over the objection of defendants, an examined copy of a purported petition in the case of Travis Miller et al. v. Christian Kelch, No. 46 on the docket of the district court of Colorado county, Tex., and bearing file mark April 8, 1848, to the introduction of which testimony defendants objected, because the copy offered was made from an instrument then in the hands of H. W. Carothers, one of plaintiff's attorneys, who was not the proper and official custodian of such paper, and the copy offered was made from such instrument at a time when the instrument was not in the custody of the proper official, and because such copy was made in Harris county, Tex., when the instrument of which it purports to be a copy was an alleged file paper in the office of the district clerk of Colorado county, and because the matters set forth in said copy and in said original do not purport to be made by any member of the Miller family, or of the Reels family, or of the Owens family, but are simply self-serving declarations of an attorney, and are hearsay, and because they clearly show that they are statements made post litem motam, and after a controversy had sprung up involving the matters therein set forth, and because it purports to be a copy of an instrument to which these defendants were not parties, nor any one with whom they are in privity, and it is not a matter of which these defendants could have knowledge or notice, and because it was not shown it was the declaration of any member of a family qualified to make a declaration of family history of any of the descendants of Mary Owens or Patrick Reels or the Miller family, and because it was only a part of what purports to be a record, and any part of a judicial record without the whole is incompetent, and for the further reason that the record in this case already showed the introduction of a certified copy of the probate court of Colorado county, entered on the 30th day of November, 1846, at a regular term of the probate court of said county, under which the will of Sarah Kelsey, deceased, was regularly admitted to probate, and the instrument now offered was a copy of the petition in a suit brought by certain persons in the district court to set aside the decree of the probate court on the ground that the will was a forgery, and that the testatrix did not have testamentary capacity, and the district judge of Colorado county was without jurisdiction or authority to set aside the decree of the probate court of Colorado county, which had been regularly made, and a proceeding brought in the way shown by the copy offered would be void, and the petition and decree offered in evidence are void. All of which objections were by the court overruled, and the defendants then and there in open court excepted."

The above assignment will be considered in connection with the following assignment:

"The court erred in admitting over the objections of the defendants certified copy of a decree in the case of Travis Miller et al. v. Christian Kelch on the docket of the district court of Colorado county, to the introduction of which the defendants objected on the same grounds as set forth in the preceding assignment, and for the further reason that the will of said Sarah Kelsey has not been offered in evidence, and the decree shows that the only party defendant to the suit was the alleged executor of the will, and that A. W. Kelsey and the beneficiaries under him were not parties to the suit, and for the further reason that the only proof that Christian Kelch had any interest in the matter in controversy is the ex parte statement of the attorney for the plaintiff in the case, and no evidence had been offered to show that the matters alleged in the petition and set out in the decree are true. All of said objections were overruled by the court, and the defendants then and there, in open court, excepted."

It will be, perhaps, well to set out a copy of the instruments referred to, as follows:

"The State of Texas, Colorado County.

"To the Hon. Judge of the District Court of Said County: Your petitioners, Travis Miller and Diana Miller, his wife, late Strawsnider, and George Reels, John Reels, Joseph Reels, and James Reels, minors under the age of 21 years, each suing by their next friend, the said Travis Miller, all residents of said county and state, would respectfully represent that heretofore Sarah Kelsey, deceased, late Strawsnider, intermarried with one A. W. Kelsey, now deceased, and on the ——— day of ———, 1846, departed this life intestate, leaving no valid will or issue or children to inherit her estate as heirs thereof by descent; that Gabriel Strawsnider, the father of said Sarah Kelsey, deceased, and Diana Miller, departed this life on the ——— day of ———, 18—, long before the death of the said Sarah; that the said Sarah and Diana were the only issue and surviving children of the said Gabriel Strawsnider and his wife, Mary, with whom he was intermarried on the ——— day of ———, 18—; that the said Mary, mother of plaintiff, and surviving widow of Gabriel Strawsnider, deceased, after his death intermarried with Patrick Reels, who, together with said Mary, his wife, departed this life prior to the death of said Sarah Kelsey, leaving the said George, John, Joseph, and James the only issue of said last marriage and their only children and heirs, and they allege the said Sarah left no surviving brother or sister or descendants of either or the whole blood, except the said Diana, as aforesaid, and that the said George, John, Joseph, and James were the only surviving brothers of the half blood, and that the ——— left no sister or descendants of the half blood, or any other person, to inherit her estate, save the petitioners.

"Now, they allege that said Sarah owned at her death in her own individual right a tract of land near one-fourth of a league, descended to her from her father, situated in said county on the east bank of the Colorado river, and is a portion of his headright league granted him by the Mexican government, and will more fully appear by the records of division of said estate, and also one negro girl name Lott, worth $500.-00, descended to her from her said mother; that the said A. W. Kelsey, surviving husband of said Sarah, deceased, at the November term, 1846, of the probate court of said Colorado county, produced in the said court paper purporting to be the last will and testament of the said Sarah, deceased, the said A. W. Kelsey was by said paper made the sole devisee of all the real and personal property of the said Sarah, deceased, as will more fully appear by the said paper, which will be shown the court with the proceedings thereon in the said probate court. They further allege the said A. W. Kelsey made a will on the ——— day of March, 1848, bequeathing therein all his real and personal property to one Christian Kelch, and departed this life on the ——— day of March, 1848, and that the said Kelch, at the last March term of the probate court of said county, produced the said will of said A. W. Kelsey in said probate court, and the same by order of said court was admitted to record as the last will and testament of said A. W. Kelsey, and the said Kelch was then appointed executor of said will, and was duly qualified as such.

"Now your petitioners positively aver that the said paper probated as first aforesaid as the last will and testament of said Sarah Kelsey, deceased, was and is not the last will and testament of the said Sarah Kelsey, deceased, and that the same was illegally and wrongfully admitted to record as her last will.

"They allege that the said paper was not written until after the death of said Sarah, and that she never signed her name to the same, nor did she ever authorize any other person so to do, nor did she make her mark as appears on said paper; that she did not authorize any person to sign her name thereto in the presence of the subscribing witnesses, nor was her name signed in their presence by her as her name and last will, but that the same was written and made without the knowledge or consent or approbation of the said Sarah, and they further allege that the said Sarah Kelsey at the time said paper purports to have been written (to wit) on the 27th day of October, 1846, and at the time of her death, November —, 1846, was minor under the age of 21 years, and was born in the year 1828, and by the law was incapable to make a will.

"And they further allege that James Dickson and Christian Kelch, whose names appear to said paper as witnesses, did not sign their names to said paper in the presence of said Sarah Kelsey nor with her knowledge or approbation.

"Your petitioners allege the said paper was and is not the last will and testament of the said Sarah Kelsey, deceased, in law or justice; that at the time said paper purports to have been written and a long time previous and up to her death she had not a sound and disposing mind and memory. Wherefore they sue and citation may issue against the said Christian Kelch, resident of said county, to appear at the next term of the district court of said county and answer this petition as devisee and executor aforesaid, and they pray your honor may grant them a decree or judgment whereby the said paper probated as the last will of said Sarah Kelsey may be annulled, vacated and set aside and declared invalid and not to be the last will and testament of the said Sarah Kelsey, deceased, and that the proceedings thereon in the said probate court may also be annulled and set aside, and they further pray your honor may further award them a proper decree vesting all the property, both real and personal, that belongs to said Sarah, real, personal, and mixed, in them according to their respective right of distribution, and that the said Kelch be compelled to surrender up to them the same, and that they may be quieted in the possession thereof against the said Kelch and all other persons, and for all such other relief and further relief, both general and special, as to equity and law may belong in the premises, and will ever pray, etc.      [Signed]    Geo. W. Smith,
                                   "Atty. pro Pltffs."

Indorsed:

"No. 46, Travis Miller et al., No. 525, Petition, v. Christian Kelch. Filed April 8th, 1848. W. J. Herbert, C. D. C. C., by Tho. J. Neavitt, Dep."

The decree offered is as follows:

"Travis Miller & Others v. Christian Kelch, etc., and Angus McNiell, Adm. with the Will Annexed of Sarah Kelsey, Dec'd. No. 46. The parties appeared by their counsel and agreed to waive a jury and submitted their matters to the court, whereupon evidence was heard and the arguments of counsel, and it is considered, adjudged, and decreed by the court that the will of said Sarah Kelsey, deceased, be declared void and of no effect, that the same be vacated and set aside, because the said Sarah was an infant, under the age of 21 years, and incapable by law to make a valid will; that the property left by the said Sarah, at her death, to wit, the tract of land near one-fourth of league, inherited by the said Sarah Kelsey from her father, Gabriel Strawsnider, and distributed to her and assigned by partition under the decree of the probate court of Colorado county, be recovered by the plaintiff Diana Miller, and the same is hereby forever vested in her, the said Diana, in full and perfect title. And it appearing that the said slave is not and has not

been in the possession of the said Christian Kelch, or of the said McNeill, administrator, as aforesaid, this judgment and decree is final as to the said defendant Christian Kelch and the said land, and the plaintiff recover their costs expended against said Kelch the case is continued to the attachment and the said slave."

The propositions submitted by appellants under these assignments are as follows:

(a) A copy of an instrument not in the custody of the proper officer, and not made while in the custody of the proper officer, imports no verity, and is inadmissible for any purpose.

(b) The copy admitted was a copy of a pleading in behalf of persons seeking to establish themselves as heirs of a deceased person in a controversy in which that was an issue, the pleading itself was not verified, was made by plaintiff's attorney therein, who had no personal knowledge of the matters pleaded, and was self-serving and hearsay, and the statements therein made post litem motam were inadmissibe, even on the question of pedigree.

(c) Appellants were not parties to the suit in which the petition was filed, and it was not in relation to property involved in this suit, and no part of the proceedings therein ought to have been received in evidence to prove heirship of the persons through whom appellee claims.

On the other hand, appellee contends:

(a) An examined copy of a court record or file paper, supported by the testimony of a witness, is admissible in evidence wherever a certified copy of the same record or file paper is admissible.

(b) Objections to this petition were addressed to the document as a whole, and if the instrument itself or any portion thereof was admissible in evidence for any purpose, the trial court properly overruled the objections to the instrument as a whole.

(c) The declarations of the plaintiffs in this suit, made through their duly authorized attorney, are properly admissible, and, as this pleading was 70 years old and formed a part of a court proceeding which resulted in a judgment in favor of the declarant, it will be presumed that the attorney was duly authorized to make these statements in behalf of the plaintiffs.

(d) The declarations of Diana Miller were admissible in evidence against the appellants, because they claimed to hold under a lost deed from her.

[1, 2] Thus the issues are sharply drawn.

In the case of Pratt v. Jones, reported in 64 Tex. 694, the action was one of trespass to try title, brought by the appellee, Jones, in the district court of Clay county, to an undivided 320 acres of land of the B. B., B. & O. R. R. Co., situated in Clay county, Tex., as described in the original petitions of plaintiffs, filed in the district court of Clay county on the 19th day of September, 1881. The appellant pleaded not guilty and answer-

ed on the 11th day of November, 1881. A jury was waived, and the cause was tried at the April term of the district court of Clay county, 1882. The land was patented to Clara V. Bulkley, and the plaintiff showed a regular chain of transfer from J. H. and D. D. Atchison, and to show that the land passed from Clara V. Bulkley to J. H. and D. D. Atchison plaintiff offered in evidence a certified copy of the judgment of the district court of Grimes county, styled R. L. Heflin et al. v. D. D. Atchison et al., No. 2056, to the introduction of which appellant objected as not the proper evidence of heirship; objection overruled. Here appellee rested. Appellant offered in evidence a tax sale deed to the bond executed by the tax collector of Clay county May 6, 1879, duly acknowledged July 14, 1879, and recorded August 5, 1879, to the introduction of which plaintiff objected. Objection was by the court overruled, and the tax deed admitted for what it was worth. Here the evidence of appellee and appellant closed. The court, speaking through Judge Robertson, used the following language:

"The appellee brought trespass to try title to a tract of land patented to Mrs. C. V. Bulkley, and proved a regular chain of title from J. H. and D. D. Atchison down to himself. He claimed that the Atchisons were the heirs of the patentee, but the only proof made of their heirship was by the introduction of a decree of the district court of Grimes county vesting in them, as heirs of Mrs. Bulkley, an undivided one-half of the land in controversy. Appellant was not a party to that decree, and we cannot see how he is to be bound by its adjudication of the heirship of the Atchisons. The decree contains recitals which indicate the proof of heirship in that case was made by the admission of the parties, but if it was proved and formally adjudged to be the fact, that fact in this suit cannot be proved by the simple production of that decree. Wharton's Ev. § 823; Freeman on Judgments, 416 and 417.

"Nor does the fact that the court had jurisdiction of the parties and the subject-matter, and by the decree vested in the Atchisons the title to the land, obviate the necessity of the proof of their heirship in this case. Unless Mrs. Bulkley was dead and they were her heirs, her heirs were not before the court, and the decree would pass the title only as against the parties to the suit and privies. The decree was admissible, but not sufficient to prove heirship of the Atchisons.

"There was no proof of common source, and the appellee having failed to connect himself with the patent to Mrs. Bulkley by sufficient evidence, the judgment in his favor was not sustained by the evidence."

As said in that case, the entire testimony depends, outside of the admitted instruments, upon the testimony of Mrs. Stephens. Aside from her testimony, there was nothing to show or in any manner prove the heirship of the plaintiff in this case, save the admitted instruments. The jury would have been warranted, the case being one in which Mrs. Stephens was a party at interest, in not considering her testimony, without the introduction and admission of the instruments above set out.

Appellants were not parties to the suit in

which the petition was filed, and it was not with reference to property involved in this suit, and the proceedings therein were not in any way related to the matters in the instant case. It may be said, therefore, truthfully, that really, the only matter in which it was pertinent to the proceedings in this suit was for the purpose of proving heirship of the appellee herein. In our opinion, it should not have been received in evidence to prove the heirship of the persons from whom appellants claim, and, as said before, it was not, and would not have been, pertinent to any inquiry in the instant case, save and except the matter of heirship of the persons through whom appellants claim, and we reiterate that appellants were not parties to the suit in which the petition was filed, and which was admitted in evidence in this cause.

We are confirmed in our opinion on this matter by the case of Freeman v. Hawkins, 77 Tex. 501, 14 S. W. 364, 19 Am. St. Rep. 769. The opinion was rendered by Chief Justice Stayton, and is as follows:

"This action was brought in right of Mary E. Freeman, the wife of D. C. Freeman, to recover a tract of land patented to James Rose. She claims through conveyance from Louis and Margaret Rose, who are alleged to have been the father and mother of James Rose, who died without issue. Defendants claim through a woman other than Margaret Rose, whom they assert to have been the mother of James Rose, and they admit and claim that he was the natural son of Louis Rose. There was much evidence as to the maternity of the grantee, and appellants claim that it required a finding that he was a son of Louis and Margaret Rose, who were husband and wife; but the evidence bearing on the question was conflicting, and we could not hold that the court below might not with propriety have found that he was the son of the woman through whom appellees claim. If such was the finding, it would be conclusive of the rights of the parties, but, in the absence of conclusions of fact and law, we cannot know on what the judge who tried the cause based his judgment, for there was evidence introduced upon another matter which may have been thought decisive of the case. Appellants were married on March 9, 1869, and have resided in this state since 1871. D. C. Freeman held under chain of transfer from Louis and Margaret Rose, but prior to his marriage to his coplaintiff, conveyed to her, her name being Mary E. Robison. Some time after their marriage, but prior to February 11, 1878, Henry Lewis, through whom appellees claim, brought a suit in the district court of the county in which the land is situated against Mary E. Robison to recover or to remove cloud from his title to the land. Service was had only by publication, and, at date last named, a judgment was rendered in favor of Henry Lewis against 'Mary E. Robison' for the land. On the trial of this cause appellees were permitted to offer in evidence that judgment, and the court may have held that it was decisive of the rights of the parties, although he may have been of the opinion that James Rose was shown to be the son of Louis and Margaret Rose. On the marriage of Mary E. Robison the law conferred on her the surname of her husband. Bish. Mar. & Div. 704a. A citation, whether to be served personally or by publication, must contain the names of the parties to the action. Rev. St. art. 1215. We are of opinion that a citation by publication requiring 'Mary E. Robison' to be cited and to appear was not sufficient to give the court jurisdiction to render a judgment that would bind 'Mary E. Freeman.' McRee v. Brown, 45 Tex. 506. If there had been actual service on Mrs. Freeman under the name of 'Mary E. Robison,' it might have been her duty to appear, even though cited in the wrong name, and although her husband was not made a party defendant with her; but the case before us is one in which she was only cited by publication issued on the ground that she was a nonresident of the state, which was untrue. She had no knowledge of the pendency of the suit against 'Mary E. Robison,' or opportunity to defend it. She was not a party to the suit, and is not bound by the judgment; and it should not have been admitted for any purpose. Dunlap v. Southerland, 63 Tex. 38.

"On August 10, 1855, Louis Rose and wife, through their attorneys, brought an action against Thomas Collins in the district court for Travis county to recover a land certificate, other than that by virtue of which the land in controversy in this cause was granted, which had been issued to James Rose. In that action they claimed as the father and mother and as sole heirs of James Rose, and recovered the certificate. Appellants offered to read in evidence the petition, answer, and judgment in that cause, which the court excluded. In this ruling we are of the opinion there was no error. The averments of the petition in that case were essentially self-serving, and we understand the rule to be that a bill in equity, coming under such circumstances, cannot be received in evidence, even on a question of pedigree. Starkie, Ev. 439, and Whart. Ev. par. 210, with cases cited in notes to both. Appellees were not parties to that suit. It was not in relation to property involved in this, and no part of the proceedings therein ought to have been received in evidence to prove the heirship of the persons through whom appellants claim. Pratt v. Jones, 64 Tex. 694."

What has been said in the cases of Pratt v. Jones, supra, and Freeman v. Hawkins, supra, is decisive of the matter complained of in this cause. Therefore, believing the assignment is well taken, and that the admission of the testimony was prejudicial to the rights of the appellant, the assignment is in all things sustained.

[3] The second assignment in the joint brief of all the appellants complains that the court erred in its refusal to submit special issue No. 11, requested by all the defendants, as follows:

"It is claimed by the defendants that, even though you should find that the Patrick Reels under whom the plaintiff claims was the son of Mary Owens, in view of the long lapse of time and a total nonclaim of ownership on the part of Patrick Reels during his lifetime, and after his death nonclaim by his administrator, nonclaim by the children of Patrick Reels, and after their deaths nonclaim by Diana Miller or her husband, Travis Miller, and after their death nonclaim by their son, Jacob Miller, and after his death nonclaim by his children, which total nonclaim extends over more than 30 years, during which period there was an assertion and claim of ownership on the part of the defendants and those from whom they claim, and from whom they derive title, which acts of ownership by them and those whose title they have are coupled with the other facts and circumstances in the case, that it ought to be presumed and found that Patrick Reels or Diana Miller (or Obenhaus) or Jacob Miller made a transfer or executed a deed of conveyance to his or her interest, if any they had, in the Mary Owens survey.

"The law is that, where the facts or deed which is sought to be presumed lies back 30 years or more, and the parties claiming the presumption, or those whose estate they have, or both combined, have, during such period, openly and notoriously and with the acquiescence of their adversaries, claimed the land and exercised acts of ownership over it, such as might reasonably be expected from the owners thereof, and the circumstances in evidence in their entirety are consistent with the presumption sought, and it is more reasonably probable that the facts sought to be presumed existed than that they did not exist, then the jury is at liberty to presume them and find accordingly. The court therefore submits the following: 'Issue No. —. Is it or is it not more reasonably probable to presume that during his lifetime Patrick Reels, or during her lifetime Diana Miller, or Obenhaus, or during his lifetime Jacob Miller, made a transfer or executed a deed or conveyance of his or her interest, if any, in said land, than to presume the contrary? Let your answer be, "We presume he, or she, did convey," or "We presume he or she did not convey," as you may find by your verdict.' "

We will consider, in addition to the above assignment, the fourth and fifth assignments, as follows:

(a) "The court erred in its refusal to submit special issue No. 21, requested by all the defendants, as follows: 'Was there a conveyance or transfer by Patrick Reels to the other alleged heirs of the interest of Patrick Reels in the Mary Owens headright certificate? Answer "Yes" or "No." ' "

(b) "The court erred in its refusal to submit special issue No. 22, requested by all of the defendants, as follows: 'Did Patrick Reels make a deed to any interest he may have had in the land located under the Mary Owens headright certificate to John Owens, Mary White, Emily Robinson, and Alexander Armstrong, or to any of said parties? Answer "Yes" or "No." ' "

The propositions under these assignments are as follows:

"As neither the plaintiff nor those through whom she claims for a period of more than 60 years made any claim to the lands in controversy, and the lands in controversy have been claimed by the defendants and those from and through whom they claimed through deeds duly recorded, with every act of exclusive ownership, for 50 years prior to the filing of this suit, it was affirmative and material error for the court to refuse to submit the issue of presumed grant to the jury for its determination."

On the other hand, it is urged:

(a) "The evidence was not sufficient to justify the court in submitting to the jury an issue as to the presumption of a deed or conveyance from Patrick Reels or Diana Miller or Jacob Miller."

(b) "The court properly refused to submit special issue No. 2 because same is on the weight of the evidence, in that it assumes the existence of facts which were not established by uncontradicted evidence."

(c) "The court properly refused to submit special issue No. 2 because it would have submitted three distinct issues in one question, and an affirmative answer thereto would have left the court in doubt as to what the jury intended to find."

(d) "The court properly refused to submit special issue No. 2 because it inquires whether Diana Miller or Diana Obenhaus executed a conveyance during her entire lifetime, when the issue, if submitted at all, should have been confined to the period subsequent to the death of James Reels in 1858."

(e) "The court properly refused to submit special issue No. 21 because there were 'no other

alleged heirs' and the question could not be intelligently answered 'Yes' or 'No.' "

(f) "The court properly refused to submit special issue No. 2 because same did not confine the inquiry as to whether or not there had been a conveyance to any one from whom the appellants had a chain of title."

(g) "The court properly refused to give special issue No. 21, because, if the expression 'other alleged heirs' means the other children of Mary Owens, the evidence forms no basis for presuming any such conveyance."

(h) "The court properly refused to give special issue No. 22 because same is so ambiguously framed that an answer thereto might mean that any one or more of five separate and distinct conditions of fact existed."

(i) "The court properly refused to give special issue No. 22 because the evidence did not raise any issue as to whether or not Patrick Reels conveyed his interest in this land to Mary White, or as to whether or not Patrick Reels conveyed his interest in this land to Emily Robinson, or as to whether or not Patrick Reels conveyed his interest in this land to Alexander Armstrong, or as to whether or not he executed a conveyance jointly to John Owens, Mary White, Emily Robinson, and Alexander Armstrong."

The holding of the court upon the first assignment of error, heretofore set out, will necessitate a reversal of the cause, and a retrial of the same. Therefore, however interesting it might be to give a critical examination to the various matters and questions raised upon the assignment set out above, in our judgment, it is sufficient to say that this court is of opinion that upon another trial of the case the matter of presumption of a deed should be by the trial court submitted to the jury, in a charge which sufficiently states the law, as applied to the facts, an appropriate charge concerning the defensive matter heretofore called to the attention of the court by the assignments of error set out above, and while not, perhaps, in the language complained of in the above assignments, we believe that, if they are not strictly correct, they are sufficient to suggest to the trial court the propriety of a correct charge embodying the law as applied to the facts in the case with reference to the presumption of a deed or deeds.

Therefore, with this suggestion, and the further suggestion, which is made for the reason that it was urged and insisted upon as being correct, in the decision of the cause, we may say that, the matter being obviated as to the motion filed in this court by the appellants, to consider their assignments of error incorrectly copied in the brief, which said assignments are as follows: The twenty-fifth assignment in motion for new trial and the twenty-sixth assignment in motion for new trial, calling the attention of the trial court and requesting that a special charge be given under the five-year statute of limitation, and requesting another special charge, requesting the court to submit the ten-year statute of limitation—these in our judgment, and in another trial of the case, should be given, for the reason that the record which we have on these propositions care-

fully considered in our opinion fairly raises issues that these matters, under appropriate instructions, be submitted to the jury for their consideration. We do not think it advisable, with reference to these matters, to call attention to the particular facts in which these matters of limitation are applicable in the trial of the case, but suffice it to say that we are of opinion that the appellants were entitled, under the law, to this phase of the matter being a correct instruction of the law as applicable to both the five and ten year statutes of limitation.

Therefore, believing, as we do, that the trial court erred in the admission of the instrument, as heretofore stated, whereby the appellees were enabled to make out their claim with reference to heirship, the cause is reversed, and remanded for a new trial.