**CROSBY COUNTY CATTLE CO. et al. v. CORN et al.**

No. 3021.

Court of Civil Appeals of Texas. Amarillo.
June 27, 1928.

Rehearing Denied Sept. 26, 1928. Judgment of
Court of Civil Appeals Affirmed by Supreme Court March 20, 1930.

Goree, Odell & Allen, L. L. Gambill, and Dayton Moses, all of Fort Worth, L. A. Wicks, of Ralls, W. P. Walker, of Crosbyton, and T. L. Price, of Tahoka, for appellants.

Bledsoe & Crenshaw and Lockhart & Garrard, all of Lubbock, for appellees.

JACKSON, J.

On July 22, 1926, Frank Corn, as plaintiff, presented to the district judge a petition seeking an injunction against the Crosby County Cattle Company, a Texas corporation, Sidney Webb, and Z. Boaz, to restrain them and each of them from using or attempting to use the cattle brand known as the Half-Circle S. The petition was considered by the judge, a temporary restraining order, as prayed for, was granted, and the case filed on July 23d, as cause No. 1019.

Thereafter, the Crosby County Cattle Company and Sidney Webb sought a dissolution of said restraining order, and on August 13, 1926, their motion to dissolve was overruled and the temporary injunction continued in force until the further order of the court.

On September 20, 1926, Frank Corn and his wife, Kittie Rider Corn, as plaintiffs, presented to the district judge their petition seeking an injunction against the Crosby County Cattle Company, Sidney Webb, Z. Boaz, Joe Cole, and Will Luman, to restrain them and each of them from going upon the ranch held under lease and in the possession of the plaintiffs and gathering, inspecting, or in any way interfering with the cattle thereon, all of which were alleged to belong to plaintiffs, a temporary injunction, as sought, was granted, writs issued, and the case filed as cause 1039.

On March 29, 1927, on motion of the Crosby County Cattle Company and Sidney Webb, the court entered an order consolidating the two suits, to be thereafter numbered 1041.

The transcript is not compiled in conformity with Rule 85 for the District and County Courts. The pleadings consist of forty-six pages of typewritten matter and the statement of the pleadings in the briefs of the parties is so intermingled with the allegations of fact and the evidence in the record, as to be of little assistance to us in stating the pleadings.

The plaintiffs, in an amended petition in 1041, from which the names of Joe Cole and Will Luman are omitted, allege that they were the lessees of certain real property in Crosby and Garza counties, known as the Half-Circle S Ranch; that in connection therewith, they were, and had been for eleven years, the owners of a certain brand known as the Half-Circle S Brand, which had been properly registered and recorded in the office of the county clerk of Crosby county, Tex.; that for the purpose of identifying and distinguishing their cattle from other cattle, they had branded their cattle Half-Circle S; that they now own and have hundreds of cattle so branded; that no other person is entitled to use said brand, and, in many instances, said brand is the only means by which they are able to identify their cattle.

That the Crosby County Cattle Company, Sidney Webb, and Z. Boaz are all engaged in the cattle business in Crosby and Garza counties and own many cattle therein; that they are each threatening to and will, if not restrained, use the Half-Circle S and brand their cattle therewith, which will result in great confusion as to the ownership and identity of the cattle and render it impossible for plaintiffs to identify and distinguish their cattle from those of the defendants so branded; that the plaintiffs are without a legal remedy and will suffer irreparable loss if defendants are permitted to use said brand.

Plaintiffs allege that about August 17, 1926, they owned 280 head of cattle which they had purchased or raised, branded with the Half-Circle S brand, and all of which were in their possession on their leased ranch; that the defendants, and especially the Crosby County Cattle Company, had, without authority or justification, falsely and maliciously asserted that they were the owners of said cattle, and the Crosby County Cattle Company had instituted suit in the district court of Crosby county against the plaintiffs, to recover title and possession of said cattle and sought to have a receiver appointed to take possession of plaintiffs' property and deliver it to the cattle company; that notwithstanding plaintiffs knew that the defendants were not entitled to any of said cattle, for the sole purpose of avoiding litigation, expense, and trouble, they entered into a written contract with the Crosby County Cattle Company, by the terms of which it was agreed that John Rider, as an arbiter, should go upon plaintiffs' ranch, inspect the cattle thereon, and determine if any, and if so how many, of said cattle were the property of said cattle company; that the ownership of the cattle was to be determined mainly by their ages; that the arbiter was fully empowered to gather, inspect, and select from said cattle all of those belonging to the cattle company, and award them to said company; that all of the cattle not so selected and awarded belonged to plaintiffs. The suit of the cattle company, No. 3032, seeking a receiver, was to be dismissed and all parties to the arbitration agreement should abide the decision of said arbiter.

That after the execution of the arbitration agreement, the arbiter went upon plaintiffs' ranch, and after inspecting all of the cattle thereon, unhampered and unhindered by plaintiffs, but without hearing any testimony as to the ownership thereof, selected 156 cows and awarded them to the cattle company; that while plaintiffs knew said cows were their property, in order to have the controversy ended, they purchased said 156 cows, received a bill of sale therefor from the cattle company, and paid $7,560 to the company, which was accepted and appropriated by it; that said cattle company falsely and fraudulently made the arbitration agreement without any intention, at the time, of abiding the decision of the arbiter, and thereafter repudiated the award of the arbiter, the sale of said cows to plaintiffs, refused to dismiss its suit No. 3032 and forcibly took from plaintiffs said 156 cows, which was a breach and a revocation of the arbitration agreement, as well as the sale of said cows to plaintiffs; that after securing and appropriating the $7,560, paid for the 156 cows, the cattle company, acting by its president, Sidney Webb, and with Z. Boaz and Sidney Webb, individually, entered into a conspiracy to fraudulently take from plaintiffs said 156 cows, and to carry out such conspiracy employed Will Luman, a well-known dangerous and violent character, and instructed him to go upon plaintiffs' ranch and forcibly take therefrom said cattle.

That on the night of September 19, 1926, Will Luman and Joe Cole, together with other employees in the employment of and under the direction of the defendants, went upon plaintiffs' ranch, armed with Winchesters and other deadly weapons, and rounded up and took from plaintiffs 108 cows and 80 calves; that said cattle were taken without the consent of plaintiffs, without any legal authority, warrant, or court order, were removed by stealth, driven from plaintiffs' ranch, and appropriated to the use and benefit of defendants; that learning of the intention of defendants to take said cattle from their ranch in the manner above alleged, Frank Corn applied for and obtained an injunction restraining the defendants, their agents and employees, from taking said cattle; that defendants' agents knew plaintiffs were seeking said injunction, but took the

cattle and removed them from the ranch before a writ could be served upon them.

Plaintiffs say that by reason of the premises and their ownership of said 156 cows, independent of the purchase thereof from the Crosby County Cattle Company, the consideration for the $7,560 paid by them to the cattle company failed; that if they are mistaken as to the validity of the award of the arbiter, and in the event the court holds that such award is binding on all parties thereto, then plaintiffs allege that they have been damaged by the unlawful conversion of said cattle in the sum of $9,800.

Plaintiffs allege the value of the cattle and plead, in sufficient detail, actual damages aggregating the sum of $17,360. They allege that the acts of the defendants in making the arbitration agreement fraudulently; entering upon their premises with force of arms and at night, taking and appropriating plaintiffs' cattle; the unlawful trespass upon the premises, and the wanton and gross oppression of plaintiffs by force, retaining the $7,560, all were done willfully, maliciously, and in gross and wanton disregard of the plaintiffs' rights, for the wrongful and fraudulent purpose of oppressing them and depriving them of their property, and sufficiently plead exemplary damages in the sum of $25,000.

The defendants the Crosby County Cattle Company and Sidney Webb answered by general demurrer, numerous special exceptions, a general denial, a plea of not guilty, and especially denied that the plaintiffs were the owners of the Half-Circle S brand, or of the 156 head of cattle at the time they were purchased from the plaintiffs by the Crosby County Cattle Company; specially denying that they acted in bad faith, or that they authorized or directed any one to go upon plaintiffs' premises and take therefrom property belonging to plaintiffs, or that they committed any trespass upon plaintiffs or their ranch, in any manner, or that they acted maliciously or wrongfully.

They also allege that about January 19, 1922, the plaintiffs were the owners of the record title to the Z-L Ranch, consisting of about 52,000 acres of land, and of the Half-Circle S ranch, consisting of about 61,000 acres of land, which adjoined the Z-L Ranch, both of which ranches were situated in Crosby and Garza counties; that the plaintiffs also owned the record title to about 1,000 head of steers and 5,000 head of breeding cattle; that on said date, Frank Corn was heavily involved in debt, and in fact insolvent; that on said date, E. F. Comegys filed suit in the United States District Court at Fort Worth, Tex., seeking a judgment against Frank Corn, and asked for an injunction and the appointment of a receiver for said lands and cattle; that Frank Corn, on the same day, answered said suit, and E.

W. Clark and William Doran were appointed receivers of said cattle and land; that the receivers were directed by the court and did forthwith take charge of said property; that about May 25, 1922, the American Exchange National Bank of Dallas, Tex., intervened in the receivership suit, alleging that Corn was indebted to it in the sum of $192,676, to secure the payment of which he had executed his chattel mortgage covering 6,610 head of cattle branded Half-Circle S and situated in Crosby county, Tex.; that a creditors' committee, consisting of T. P. Perkins, J. T. Pemberton, and Sidney Webb, was appointed in behalf of the unsecured creditors of Frank Corn, to negotiate with the secured creditors and the receivers, with a view of taking over all of the property involved in the receivership; that an agreement was made by which the receivers were to transfer to the trustees or their nominees the Z-L Ranch and the personal property, including all cattle and live stock covered by the mortgage held by the American Exchange National Bank and embracing all cattle bearing the Half-Circle S brand; that the transfer and conveyance was to be made subject to all indebtedness owed by Corn and secured by liens on the property, which amounted to approximately $600,000; that said agreement was reported to and approved by the United States District Court on April 20, 1923; that in order to take over and handle the property, the Crosby County Cattle Company was incorporated, and the receivers assigned and transferred to said Crosby County Cattle Company said lands and cattle, and the possession thereof was duly delivered to said company; that on May 31st, the receivers, under order of the United States District Court, assigned to the Crosby County Cattle Company the entire residue and remainder of Frank Corn's estate not theretofore sold by the receivers, and such last assignment included all property and interest and assets of whatever description held or possessed by said Frank Corn; that Frank Corn and his wife, the plaintiffs in this suit, also assigned, released, and quitclaimed to the Crosby County Cattle Company all interest in and to the land, cattle, and personal property that had been assigned to the Cattle Company by the receivers; that thereby the Crosby County Cattle Company became the owner of the Z-L Ranch and all cattle in the Half-Circle S brand, and likewise the owner of the Half-Circle S brand itself, and all rights incident thereto.

Said defendants allege that being desirous of disposing of the remainder of the cattle owned by the Crosby County Cattle Company, a sale was made to Z. Boaz in February, 1926; that in rounding up the cattle, it was found that certain of the Half-Circle S cattle owned by the cattle company were in the possession of plaintiffs; that demand was made upon plaintiffs for said cattle, which was re-

fused, and Frank Corn threatened the agents and employees of the Crosby County Cattle Company with serious bodily injury should they come upon his ranch to make any investigation as to said cattle; that after some controversy as to the ownership of the cattle, the Crosby County Cattle Company and Frank Corn agreed that their difference should be submitted to John Rider as arbiter, who was authorized to go upon plaintiffs' ranch, where Frank Corn was to round up and show the arbiter all cows, four years of age or older, originally in the straight Half-Circle S brand and their calves, then in the possession of plaintiffs; that pursuant to said agreement, the arbiter awarded to the cattle company 156 head of cattle; that the plaintiffs represented to the arbiter that they had shown him all cattle in the Half-Circle S brand four years of age or older, and the arbiter and the defendants believed and relied upon such representations; that Frank Corn, knowing that said cattle did not belong to him, but belonged to said cattle company, purchased said 156 head of cows for the sum of $7,560, which was less than the market value of said cattle, but in order to settle the controversy the cattle company sold the cattle to Frank Corn for said sum, believing that the representations that all the Half-Circle S cattle four years of age and older had been shown to the arbiter, and that the 156 head represented the cattle owned by the Crosby County Cattle Company, wrongfully in possession of Frank Corn; that the arbiter, in order to identify said 156 cattle, bobbed their tails, and it was understood that until the company delivered its cattle to Z. Boaz, Frank Corn would not dispose of or sell any cattle in his possession in the Half-Circle S brand, without advising said Rider and the cattle company, in order that the cattle so sold could be inspected; that to conceal other cattle in the Half-Circle S brand belonging to the Crosby County Cattle Company, Frank Corn proceeded to bob the tails of all Half-Circle S cattle in his possession and dispose thereof without notifying either the arbiter or the cattle company; that the cattle company later discovered that the plaintiffs had fraudulently failed to exhibit to the arbiter all the cattle in their possession, but, on the contrary, had concealed approximately 175 cattle of the same kind, class, and brand, which belonged to the cattle company, in addition to the 156 head awarded to it by the arbiter.

Said defendants set up a cross-action against the plaintiffs based on the alleged false and fraudulent conduct of Frank Corn in inducing them to sell the 156 head of cows and their calves at less than their market value and in concealing from the arbiter 175 head of their cattle in the possession of plaintiffs, and seek, in their cross-action, to recover the sum of $12,000, and also asked $25,000 exemplary damages against the plaintiffs for certain alleged malicious and fraudulent conduct, threats of violence, etc.

These defendants also set up a cross-action against their codefendant Z. Boaz, but no issue is presented on this appeal relative thereto.

The defendant Z. Boaz answered by general demurrer, special exceptions, general denial, plea of not guilty, and denied any interest in the controversy between the plaintiffs and the cattle company and Sidney Webb; that he never, at any time, claimed any ownership or control of the brand nor advised with, nor conspired with any one to injure or molest plaintiffs, but only insisted on receiving the cattle belonging to the Crosby County Cattle Company, which he had bought and paid for. He also pleads a conspiracy between the plaintiffs and his codefendants to prevent him from securing the number of head of cattle purchased, answers the cross-action of the Crosby County Cattle Company and Sidney Webb against him, and pleads a cross-action against all the parties, and asks for $12,320 damages.

The plaintiffs, by supplemental petitions, in reply to the answers of all the defendants, pleaded general demurrer, certain special exceptions, general denial, and specially denied any fraud, concealment of cattle, or conspiracy.

In response to special issues submitted by the court, the jury found in effect that the 156 head of cattle awarded by John Rider to the Crosby County Cattle Company was not the property of Kittie Corn on and prior to the 17th day of August, 1926; that the cattle driven from the plaintiffs' ranch on September 19, 1926, were the property of plaintiffs; that the defendants Crosby County Cattle Company and Z. Boaz wrongfully took from the plaintiffs the cattle driven from plaintiffs' ranch on September 19, 1926, without the consent of plaintiffs and with intent to appropriate them to the use and benefit of said defendants, and that all the defendants acted willfully and maliciously in driving said cattle from plaintiffs' ranch on said date; that Z. Boaz did not act in good faith and believe that the 97 head of cattle which he received from Will Luman belonged to the Crosby County Cattle Company; that the Crosby County Cattle Company and Sidney Webb acted in good faith in making the arbitration agreement, and intended to carry it out; that Frank Corn did not convert to his own use any cattle belonging to the Crosby County Cattle Company; that Will Luman and Joe Cole acted under the advice and direction of Z. Boaz when they drove the cattle from plaintiffs' ranch; that the market value, in Crosby county, of the cows driven from plaintiffs' ranch on September 19th, was $50 per head, and the market value of the calves was

$30 per head; and found exemplary damages against the defendants in the sum of $15,000.

On these findings of the jury, the court rendered judgment for plaintiffs against the defendants jointly and severally, for the sum of $7,100 actual damages and $15,000 exemplary damages, and perpetually enjoined the defendants from using or attempting to use the Half-Circle S brand. From this judgment, the defendants, as appellants, prosecute this appeal against the plaintiffs, as appellees.

■ The appellants assign as error the action of the court in overruling their special exception to the appellees' petition, because it failed to allege whether the 280 head of cattle claimed by appellees and branded Half-Circle S were the community property of appellees or the separate property of Mrs. Corn. The appellees allege that they were the owners of and had possession of said 280 head of cattle; that they were branded Half-Circle S, marked underbit in the left ear, and that said cattle had been bought and paid for or raised by appellees.

Frank Corn, the husband of Kittie Corn, was authorized to maintain, in his own name, a suit for the recovery of community property; but the joinder of Mrs. Corn in the suit, as plaintiff, did not constitute reversible error, especially as the appellants failed to show any injury resulting to them because thereof. The husband may sue alone or jointly with his wife for the recovery of her separate property. The facts tend to show that some of the property involved was community and some of it the separate property of Mrs. Corn. Appellants' so-called special exception was, in effect, but a general demurrer to a paragraph of appellees' petition. It would be better pleading for the appellees to allege what part of the property was community property and what part of it belonged to the separate estate of Mrs. Corn; but under the exception and the circumstances revealed by the record, the failure to sustain this exception by the court does not constitute reversible error. The judgment bars any other recovery by the plaintiffs or either of them. Craddock v. Goodwin, 54 Tex. 579; San Antonio Street Ry. Co. v. Helm et al., 64 Tex. 147; Lee v. Turner, 71 Tex. 264, 9 S. W. 149; San Antonio & Aransas Pass Ry. Co. v. Flato, 13 Tex. Civ. App. 214, 35 S. W. 859; Johnson v. Erado et ux. (Tex. Civ. App.) 50 S. W. 139; M. K. & T. Ry. Co. v. Jamison, 12 Tex. Civ. App. 689, 34 S. W. 674; M. K. & T. Ry. Co. of Texas v. Starr et ux., 22 Tex. Civ. App. 353, 55 S. W. 393; International & Great Northern Ry. Co. et al. v. Doolan et al., 56 Tex. Civ. App. 503, 120 S. W. 1118; Zeiger v. Woodson (Tex. Civ. App.) 202 S. W. 163; Crenwelge et al. v. Ponder et al. (Tex. Com. App.) 228 S. W. 145.

■ The appellants present as error the action of the court in sustaining appellees' exception to the allegation in appellants' answer "with reference to the bankruptcy of Plaintiff and the organization of the Defendant Crosby County Cattle Company, etc.," because such allegations are immaterial and calculated to prejudice and inflame the minds of the jury and lead them into investigation of matters which transpired many years prior to the occurrences complained of in appellees' suit.

In connection with this assignment, the appellants urge as error the action of the court in excluding from the testimony a certified copy of the bill of complaint filed in the United States District Court at Fort Worth for a receiver of Frank Corn's estate; the answer of Frank Corn in the receivership; the order of the court appointing receivers; the bond of the receivers; the plea of intervention of the Exchange National Bank in said suit; the judgment of the United States District Court ordering a sale of Frank Corn's property by the receivers; the application of the receivers for the sale of a remnant of the property; an acknowledgment by the Exchange National Bank dated May 31, 1923, that the indebtedness of Frank Corn had been paid by the purchasers; and the order of the court, setting for a hearing the application for the sale of the remnant of Frank Corn's estate.

Appellants contend that the pleading to which the exception was sustained and the testimony which was excluded were material, in order for them to establish title to the cattle.

The court permitted the appellants to introduce in evidence the conveyance or bill of sale from said receivers to the Crosby County Cattle Company covering all the cattle belonging to Frank Corn and covered by the mortgages of the American Exchange National Bank; the transfer by said receivers of the entire residue and remainder of Frank Corn's estate not theretofore sold; a release and quitclaim by Frank Corn and his wife, Kittie Rider Corn, to the Crosby County Cattle Company, its successors and assigns, of all their right, title, and interest in and to all cattle of whatever age or description covered by and included in the sale or sales made or being made to the Crosby County Cattle Company by the receivers of Frank Corn's estate; the mortgages from Frank Corn to the American Exchange National Bank covering all cattle branded Half-Circle S, and a bill of sale from the Crosby County Cattle Company to Mrs. Kittie Rider Corn in her separate right, all the personal property purchased by the company from the receivers, except all cattle of whatever description, all engines and other equipment for the pumping and obtaining of water, and one Ford truck.

Before the court proceedings which were excluded were offered, appellees admitted in their testimony that all the cattle they owned in the Half-Circle S brand and the increase thereof became the property of the Crosby County Cattle Company by virtue of the sale by the receivers and the conveyance by themselves to said company, and that all cattle in said brand four years old and older belonged to said company unless it had sold them.

The controversy in this case is not over the validity of the title to the cattle acquired by appellants through the receivership proceedings and the voluntary conveyance by appellees, but over cattle the appellees claim to have acquired after those transactions.

Under the facts revealed by this record, these assignments are overruled.

■ The appellants assail as error the action of the court in permitting appellee to introduce in evidence the petition filed by Frank Corn in cause No. 1019, seeking to enjoin appellants from using or attempting to use the Half-Circle S brand; the judgment of the court, granting, as prayed for, a temporary injunction and the writs issued thereon; the motion of appellants to dissolve such temporary restraining order; and the judgment of the court refusing such dissolution.

The appellants also present for review the action of the court in admitting in evidence appellees' petition in cause No. 1039, in which an injunction was sought to restrain appellants from going upon appellees' ranch, and in any way interfering with appellees' cattle; the fiat of the court on said petition granting such temporary injunction and the writs issued by the clerk in conformity therewith.

The appellants' objections to the introduction of these instruments are that the petitions were self-serving declarations of appellees; that the orders of the court in refusing to dissolve the temporary injunction in cause No. 1019 and the orders granting the restraining order in both cases were not final judgments; that the allegations of fact presented in both of said cases are involved and to be determined in this suit; and that such pleadings, writs, and court orders are irrelevant, immaterial, incompetent, and prejudicial.

■ There was no issue before the court in the trial of this case as to appellees having sought and obtained temporary writs of injunction or the refusal of the court, on motion by appellants, to dissolve the writ obtained in cause No. 1019; nor was this a hearing seeking the granting or the dissolution of temporary restraining orders. The facts pleaded in said two petitions are substantially the facts alleged in appellants' petition on which the two cases, after having been consolidated, were tried on the mer-

its. The law is that the abandoned pleadings of a party to a suit, which contain material admissions against his interest, are admissible in evidence in behalf of the adverse party. Houston E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877; Campbell et al. v. McLaughlin et al. (Tex. Com. App.) 280 S. W. 189. But this rule does not obtain where the litigant offers his own pleadings as testimony to prove his case.

"The pleading of a party in a cause is not admissible in evidence to prove its allegations. The correctness of this proposition would seem to be so manifest as to render the citation of authorities wholly unnecessary. Courts have, however, been called upon to announce it. Green v. Morse et al., 57 Neb. 391, 77 N. W. 925, 73 Am. St. Rep. 518; Bell v. Throop et al., 140 Pa. 641, 21 A. 408." Hocking Valley Ry. Co. v. Helber, 91 Ohio St. 231, 110 N. E. 481, 485.

See, also, Fink v. Kansas City Southern Ry. Co., 169 Mo. App. 691, 154 S. W. 1134; Freeman et al. v. Hawkins et al., 77 Tex. 498, 14 S. W. 364, 19 Am. St. Rep. 769; House et al. v. Stephens et al. (Tex. Civ. App.) 198 S. W. 384; 22 C. J., page 339, Paragraph 381.

The verified petitions offered in evidence were but the ex parte affidavits of appellee Frank Corn, and, in our opinion, were clearly inadmissible, and the orders of the court in connection with the application for the granting of and the issuance of temporary injunctions were calculated to impress the minds of the jury with the court's opinion of the credibility of the witness Frank Corn, and the sufficiency of his testimony to warrant a finding that appellees were the owners of the Half-Circle S brand and of the cattle involved in the controversy, both of which were very material issues in the case. This assignment is sustained.

■ The appellants, by several assignments and propositions, urge as erroneous the action of the court in permitting, over their objections and exceptions, the counsel for appellees, in his closing argument to the jury, to make statements not warranted by the record and indulge in vituperative and inflammatory epithets and statements calculated to prejudice the minds of the jury against appellants.

Counsel for appellee, in the beginning of his argument, stated: "I might say also that I feel just a little bit embarrassed when the duty falls on me to follow a man that you just listened to, a man with a state wide reputation, a man that represents a big Cattle Raisers Association, a man from the big city of Fort Worth, and while he was making that wonderful argument, the thought came to me that if his clients had not stolen all of my client's money and cattle, that my client

might have been able to go to Fort Worth and get him a big lawyer, but as we were stolen out Frank Corn had to content himself with just an ordinary country lawyer. I might further say that this case, from the standpoint of attorneys, looks to me like the earmarks of some of the fraudulent schemes or conspiracies that entered into this case from the beginning. Mr. Moses holds a very responsible job as attorney for the Cattle Raisers Association of Texas, whose duty it is to prosecute cow thieves. He appears in this case representing what we term a 'bunch of cow thieves.' And another proposition that looked funny to me, that they even go out and get the District Attorney in order to sew the matter plum up. These men are here, of course, by reason of their employment, and we have no criticism to make on that, but when Mr. Z. Boaz and Mr. Webb went out to select attorneys, they paid particular attention to get those lawyers whose duties were to prosecute a bunch of thieves or high-jackers, and they, at least, are protected as far as the Cattle Raisers Association is concerned."

We deem it unnecessary to quote further from the statements and arguments objected to by appellants, as the above is a prelude to a speech, bristling with many vitriolic denunciations of appellants as "cow thieves" and "high-jackers," who went to appellees' ranch "to get these cattle and murder Frank Corn, if need be to do so." In our opinion, the court, in permitting such argument of counsel for appellee, committed error. Blohm et al. v. Krueger (Tex. Civ. App.) 297 S. W. 596; Western Union Co. v. Perry, 95 Tex. 645, 69 S. W. 131; Davis v. Hill (Tex. Com. App.) 298 S. W. 526.

The appellants, by several assignments, urge as error the action of the trial court in refusing to grant them a new trial because of the misconduct of the jury. The record discloses that the case was submitted to the jury on Saturday afternoon; that after some considerable deliberation, the jurors had failed to agree on certain of the issues; that they were divided on the answer to special issue No. 1, which was, in substance, whether or not the 156 head of cattle awarded to the Crosby County Cattle Company by the arbiter, John Rider, was the property of Kittie Rider Corn on and prior to the 17th day of August, 1926; that they were also divided on whether or not the name of Sidney Webb should be included in the answer to issue No. 8, which was, in effect, state the name or names of the defendants, if any, who acted willfully and maliciously in the taking of said cattle; that it was proposed by the jurors who wanted to answer issue No. 1 in the affirmative, that they would answer said issue in the negative, if those who wanted to answer said issue in the negative would include the name of Sidney Webb in the answer to issue No. 8. This proposition was accepted and the answers made on such agreement. The record also discloses that during the deliberations of the jury, and before the issues had been answered, the jury, while separated and not deliberating on the verdict, learned from citizens that in their opinion, regardless of the jury's verdict, the case would, in any event, be appealed and their findings were of no great importance. This matter was discussed in the jury room and the same opinion expressed by some of the jurors. The record also discloses that one of the jurors approached the trial judge while he was in his office during a recess of court and none of counsel present, and stated to him substantially that he believed the jurors could get together if they knew whether or not an appeal would be taken in the case; that the judge replied in substance that he could not advise him; that the juror returned to the jury room and informed the other eleven jurors that he had conferred with the judge and he thought "we ought to go ahead and finish up the case."

There are numerous other facts and circumstances disclosed by the evidence on the motion for rehearing, which tend to show that the answers of the jury to issues Nos. 1 and 8 were not the result of the unbiased judgment of each of the jurors from the testimony introduced under the direction of the court in the trial of the case. This assignment is sustained. Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Gulf, Colorado & Santa Fe Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895; Lorenzen v. Keenan et al. (Tex. Civ. App.) 266 S. W. 839; Smith v. Harris et al. (Tex. Civ. App.) 252 S. W. 836; Texas Midland Ry. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137.

The appellant challenges as erroneous a number of the special issues, in the form submitted, because on the weight of the evidence, assumed the ownership of the cattle, and that the defendants or one of them wrongfully took the cattle without the consent of appellees. These assignments are not tenable, for the reason that they are not upon the weight of the testimony and the only assumption by the court in the submission of the issues was as to the taking of the cattle by appellants from appellees' ranch, and this assumption was not error, because the evidence on such issue was uncontroverted.

The appellants assail the sufficiency of the testimony to support the findings of the jury on the issues submitted by the court. The case will be reversed, and we shall refrain from discussing the evidence; but in our opinion it was sufficient to sustain the finding of the jury on the issues submitted.

290

There are a number of other assignments by the appellants presenting alleged error of the trial court, which do not require a discussion, for, as presented, and under the facts revealed by the entire record, none of them constitute reversible error.

For the errors discussed, the judgment is reversed, and the cause remanded.